1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11   HEIDI LYNN DAVIDSON,                    Case No. 1:22-cv-01288-EPG

12                    Plaintiff,             FINAL JUDGMENT AND ORDER
                                             REGARDING PLAINTIFF'S SOCIAL
13        v.                                 SECURITY COMPLAINT

14   COMMISSIONER OF SOCIAL                  (ECF Nos. 1, 12).
     SECURITY,
15

16                    Defendants.

17

18

19          This matter is before the Court on Plaintiff's complaint for judicial review of an

20   unfavorable decision by the Commissioner of the Social Security Administration regarding her

21   application for social security benefits. The parties have consented to entry of final judgment by

22   the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to

23   the Court of Appeals for the Ninth Circuit. (ECF No. 11).

24          Plaintiff presents the following issues:
            1. The ALJ's residual functional capacity determination is not supported by
25          substantial evidence.
26          2. The ALJ failed to fully and fairly develop the record regarding the Plaintiff's
            functional limitations.
27
     (ECF No. 18, p. 3).
28

1

1      Having reviewed the record, administrative transcript, parties' briefs, and the applicable

2   law, the Court finds as follows.

3   **I.      DISCUSSION**

4      Plaintiff challenges the following RFC formulated by the ALJ:

5      After careful consideration of the entire record, the undersigned finds that the
       claimant has the residual functional capacity to perform light work as defined in 20
       CFR 404.1567(b) and 416.967(b) except the claimant can occasionally lift and/or
6      carry about 20 pounds, can frequently lift and/or carry about 10 pounds. She can
       stand and/or walk for about 6 hours out of an 8-hour workday. She can sit for more
7      than 6 hours out of an 8- hour workday. She can frequently climb stairs and ramps,
       but should avoid work on ladders, ropes, and scaffolds, at unprotected heights, or
8      work in close proximity to dangerous moving machinery. She is able to work in an
       environment with loud noise. She is able to understand, remember, and carry out
9      simple routine tasks requiring little to no judgment, that can be learned in a short
       period, typically in about 30 days. She can sustain concentration, persistence, and
10     pace for these simple routine tasks over a typical workday and workweek. She is
       able to interact on an occasional basis with supervisors, coworkers, and the public.
11     She is able to make work decisions and can tolerate task changes. She is able to
       travel, plus can recognize and avoid work hazards.
12
13  (A.R. 23).

14      Plaintiff first argues that the ALJ's RFC assessment is not supported by substantial

15  evidence. (ECF No. 18, pp. 12-16). According to Plaintiff, the ALJ completely rejected the

16  opinions of two state agency medical consultants, Dr. Khong and Dr. Bugg, finding them to be

17  "not persuasive." (*Id.*, p. 14) (citing A.R. 27, 750, 777, 1375, 1377-78). As these medical

18  opinions were the only ones to provide a "function-by-function analysis of Plaintiff's physical

19  capabilities," Plaintiff argues that the ALJ impermissibly "interpreted the raw medical data and

20  improperly substituted her judgment for that of a medical expert." (ECF No. 18, p. 14) (internal

21  citations omitted). Plaintiff also contends that the ALJ made the same error when formulating

22  Plaintiff's mental RFC after the ALJ found the opinion of Dr. Card, a state agency psychological

23  consultant, to be only "minimally persuasive because they only rated the level of the Plaintiff's

24  limitations rather than providing a statement of the most the Plaintiff can do." (*Id.*, p. 15) (citing

25  A.R. 28).

26      Plaintiff further challenges the ALJ's decision on the ground that the ALJ failed to

27  develop the record. (*Id.*, pp. 16-17). Plaintiff argues that the ALJ's duty to develop the record was

28  triggered once "the ALJ determined that the State Agency medical opinions concerning the

1   Plaintiff's physical and mental capabilities were unpersuasive or less persuasive" because "[t]here

2   were no other medical opinions addressing the Plaintiff's functional capabilities." (*Id.*, p. 17).

3        **A.     Legal Standards**

4        A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20

5   C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2,

6   § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the

7   capacity for sustained performance of the physical-mental requirements of jobs"). "In

8   determining a claimant's RFC, an ALJ must consider all relevant evidence in the record,

9   including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain,

10  that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec.*

11  *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). And

12  "because it is the ALJ's responsibility to formulate an RFC that is based on the record as a whole,

13  . . . the RFC need not exactly match the opinion or findings of any particular medical source."

14  *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal.

    Aug. 22, 2014).

15       "An ALJ's duty to develop the record further is triggered only when there is ambiguous

16  evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*

17  *v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). However, because it is the claimant's

18  responsibility to prove that she is disabled, the claimant must offer some evidence to trigger the

19  duty. *Id.* ("Mayes did not provide the ALJ with any medical evidence indicating that she had

20  herniated discs until after the ALJ Hearing. The ALJ had no duty to develop the record by

21  diagnosing Mayes' herniated discs.").

22       In reviewing findings of fact with respect to RFC assessments, this Court determines

23  whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial

24  evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971),

25  but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir.

26  1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a

    conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

27  //

28

**B.      Analysis**

The Court finds that the ALJ's RFC assessment is supported by substantial evidence. Here, the ALJ, as required, considered the medical evidence regarding Plaintiff's physical impairments, including Plaintiff's own reports and the findings of medical professionals who examined Plaintiff:

> The record shows the claimant is obese with a Body Mass Index ("BMI") of 46.9 (10F/2) recently down to 42.53 (12F/114). The undersigned has considered Social Security Ruling 19- 2p, which discusses the effect of obesity on work activities. The undersigned finds that, in this instance, the claimant's obesity is severe in combination with her other impairments, and likely exacerbates her symptoms. The claimant's obesity has been taken into consideration in the limitations assessed and in the determination of the claimant's residual functional capacity.

> However, the evidence in the record considered as a whole, is not consistent with the claimant's allegations of total disability.

> The record also reflects a diagnosis of diabetes mellitus. With regard to the claimant's reports of hypoglycemia, the record noted good response after changing her medications, and in January 2021, treatment notes noted the claimant no longer had hypoglycemia (11F/7). Similarly, early records in 2019 also showed the claimant generally denying hypoglycemia (12F/1). Subsequent records noted some increased hypoglycemic episodes potentially related to decreased renal function (11F/4). However, the record does not support the frequency of hypoglycemic symptoms occurring 1 to 2 times per week as testified at the hearing, nor specific functional limitations related to these episodes.

> The undersigned also considered the claimant's reports of peripheral neuropathy and loss of sensation in her feet as well as in her hands. The record generally shows the claimant denying numbness including foot numbness (e.g. 11F/32). The record shows only one monofilament examination performed in May 2019 with no specific results noted (12F/5). Likewise, physical examination findings have routinely noted grossly intact sensations (3F/3; 8F/3, 10F/2; 12F/112). However, in August 2020, the claimant reported day and night-time paresthesias in the lower extremities (15F/55, 57) and physical examination noted diminished sensation to light touch, pinprick, and vibration in the lower extremities (15F/58). However, the record does not support the complaints of numbness in the upper extremities. In functional terms, even after the claimant's August 2020 report of paresthesias in her lower extremities, records still noted increased exercise (e.g. 12F/121), which argues against assessing any additional functional limitations.

> With regard to the claimant's reports of losing her balance once or twice per day, the record does not show the claimant reporting this or similar symptoms to her treating providers. Moreover, the record shows the claimant generally denying any balance issues (11F/32). Accordingly, the undersigned finds this allegation is not fully supported by the record.

> The undersigned also considered the claimant's kidney disease, the record shows

progressive worsening. Most notably records in September 2020 noted progression of the claimant's chronic kidney disease from stage 3 to stage 4 (e.g. 12F/87), as well as a referral in the same month for kidney transplant service (12F/150). However, subsequent records have not further developed the claimant's transplant status. On the other hand, the claimant's nephrology records routinely show her reporting feeling well (12F/115, 120, 142, 145, 155), exercising more (12F/124), and generally denying any significant symptoms (e.g. 12F/124). The undersigned also considered the claimant's hearing testimony that she takes naps lasting 2 hours one to 2 times per day. However, this is not fully supported by the record. Notably, records in March 2019 showed the claimant reporting she did not take naps during the day (10F/4) and later records do not show the claimant reporting this or similar complaints to her treating providers.

(A.R. 24-25). Specifically, the ALJ noted that, when considering the functional impact of all of Plaintiff's physical impairments,

[R]ecords generally show the claimant doing well despite her conditions. For example, records in May 2021 noted the claimant "has been well" and reported no significant symptoms (12F/114). Likewise, physical examination findings were generally normal including normal strength rated at 5/5 bilaterally in the upper and lower extremities and grossly intact sensation (e.g. 12F/115). Likewise, records show the claimant walking to the bus stop to pick up her nephew daily and that this takes approximately 20 minutes (11F/19). Additionally, recent records show the claimant having to walk more after her car broke down (18F/6). Overall, this suggests functioning within the assessed residual functional capacity.

(A.R. 25-26). The ALJ also considered the evidence regarding Plaintiff' mental impairments:

Turning to the claimant's psychological conditions, the record reflects diagnoses of depression and anxiety. The claimant's past history shows good educational achievement including a bachelor's degree in psychology (2F/43; hearing testimony). However, the claimant has alleged difficulties with memory, understanding, concentration, and persistence. In November 2018, the claimant underwent a psychological consultative examination with Jeanne Card, PsyD. The claimant exhibited some deficits on mental status testing in the areas of memory and concentration. Specifically, the claimant was able to recall 3 out of 3 items immediately, two out of three items after a five-minute delay, was unable to complete a serial 3 series, or spell WORLD backwards (7F/3-4).

On the other hand, the undersigned also considered that the claimant was independent in personal care activities, was able to cook, perform some chores including vacuuming, and she also shopped for groceries (7F/2). Moreover, the claimant reported she enjoyed playing videogames (16F/121), and read a lot online (7E/5), and was able to follow a special diet including special food preparation methods because of her kidney disease (hearing testimony). Overall, this indicates an adequate ability to understand, remember, maintain concentration and persist with activities. Additionally, a review of the claimant's specialized psychological records shows improvement of depression and anxiety symptoms with medications

and therapy (15F/181), with mental status findings noting occasional reports of slow thinking, but with otherwise good stable findings (e.g. 15F/28). Out of an abundance of caution, the undersigned finds it prudent to limit the claimant to simple routine tasks requiring little to no judgment, along with reduced social interaction in light of the claimant's reported social isolation. However, the record does not support greater limitations.

(A.R. 26).

Plaintiff's contention that the ALJ interpreted "raw medical data" fails for two reasons. (ECF No. 16, p. 12). First, as a general matter, there "is a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). Second, there is nothing to show that the ALJ made explicit medical judgments based on the raw data from the record. *See Chao v. Astrue*, No. 2:10-CV-01972 KJN, 2012 WL 868839, at *11 (E.D. Cal. Mar. 13, 2012) (noting that an ALJ cannot go outside record to make his own exploration and assessment of a claimant's medical condition). Rather, the ALJ's RFC assessment was based on the fact that medical professionals reported normal findings from Plaintiff's physical and mental status examinations, as well as Plaintiff's reported lack of symptoms, participation in daily activities, and noted increase in exercise. (A.R. 24-26).

Plaintiff concedes the medical evidence discussed by the ALJ included "Plaintiff's diagnoses, test results, physical examinations, and treatment received," but argues that the evidence on record was inadequate because the records "did not describe any functional limitations." (ECF No. 18, p. 14). Plaintiff does not otherwise point to any ambiguous evidence on record that would have triggered the ALJ's duty to develop the record. And while Plaintiff contends that the ALJ was obligated to have another examining physician review all the evidence and render an opinion on Plaintiff's functional capacity, the ALJ was not required to do so. *Hogan v. Kijakazi*, No. 1:20-CV-01787-SKO, 2022 WL 317031, at *10 (E.D. Cal. Feb. 2, 2022) (noting no "rule of general applicability that an ALJ must obtain an examining opinion in every case before rendering an RFC determination").

Lastly, the Court notes that Plaintiff offers no developed argument to show that additional functional limitations were warranted in the RFC. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574

F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting challenge to RFC determination where the claimant did "not detail what other physical limitations follow from the evidence of his knee and shoulder injuries, besides the limitations already listed in the RFC"). Accordingly, the Court does not find the RFC to be unsupported based on the ALJ not further developing the record by obtaining an examining opinion.

## II.     CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:    **December 18, 2023**                    /s/ _Erica P. Grosjean_
                                              UNITED STATES MAGISTRATE JUDGE